*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-08-00538-CV

In the Interest of **H.R.H.** and K.L.H., Minor Children,

From the 293rd Judicial District Court, Dimmit County, Texas
Trial Court No. 99-06-09104
Honorable Cynthia Muniz, Judge Presiding

Opinion by: Karen Angelini, Justice

Sitting: Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebecca Simmons, Justice

Delivered and Filed: April 15, 2009

AFFIRMED

Appellant Bruce Aaron Horton appeals the trial court's order granting a motion to modify in a suit affecting the parent-child relationship and removing him as the conservator with the right to determine the primary residence of his children. We affirm.

## BACKGROUND

When Horton and Hollie R. Looney divorced in November of 1999, they were named joint managing conservators of their two daughters, H.R.H. and K.L.H. In the divorce decree, Horton was designated the conservator with the right to establish the children's primary residence. Since the

divorce, Horton and the children have lived in Carrizzo Springs, Texas,[1] and Looney has lived in Lakewood, Ohio. Additionally, H.R.H. and K.L.H. have traveled to Ohio to visit Looney during summer and Christmas vacations, and Looney has traveled to Texas to visit the children on other occasions.

In May of 2007, Looney filed a motion to modify conservatorship, requesting that she be named the conservator with the exclusive right to determine the children's primary residence. After conducting an evidentiary hearing and interviewing H.R.H. and K.L.H. in chambers, the trial court granted Looney's motion. Horton then filed this appeal. The trial court stayed the modification order pending disposition of this appeal.

### STANDARD OF REVIEW

We review a trial court's decision to modify the terms and conditions of conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In the Interest of M.R.*, 975 S.W.2d 51, 53 (Tex. App.—San Antonio 1998, pet. denied). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). An abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

---

[1] Horton and the children also lived in Uvalde, Texas, for a brief period.

## MODIFICATION OF CONSERVATORSHIP

Under Texas Family Code section 156.101, the trial court may modify the terms and conditions of conservatorship of a child only if the modification is in the child's best interest, and the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the rendition of the order. TEX. FAM. CODE ANN. § 156.101 (Vernon 2009). The party moving for modification has the burden of proving a material and substantial change in circumstances. *In re Knott*, 118 S.W.3d 899, 902 (Tex. App.—Texarkana 2003, no pet.). To prove a material change of circumstances has occurred, the movant must show the conditions as they existed at the time of entry of the prior order and what material changes have occurred in the intervening period. *In re T.W.E.*, 217 S.W.3d 557, 559 (Tex. App.—San Antonio 2006, no pet.). A determination of whether a material change in circumstances has occurred is fact-intensive and is not guided by rigid rules. *Id*.

## MATERIAL AND SUBSTANTIAL CHANGE IN CIRCUMSTANCES

In his first issue, Horton contends Looney failed to meet her burden because she did not establish the circumstances in existence at the time the original conservatorship order was rendered. The record, however, shows otherwise. When the original conservatorship order was rendered, Looney did not have a steady job or income, did not have an established residence, and did not have any family in Texas to provide assistance and support. When the original conservatorship order was rendered, Horton had no other children, was living in his parents' home, and his mother and sister were available to assist him and support him in raising H.R.H. and K.L.H. When the original conservatorship order was rendered, H.R.H. and K.L.H. were ages two and one, respectively. Based

on the foregoing, we conclude sufficient evidence was presented to establish the circumstances in existence when the original conservatorship order was rendered.

Looney also met her burden to show that material changes occurred in the intervening seven-year period. The trial court heard testimony regarding the present circumstances of Looney, Horton, and the children. According to this testimony, Looney was now steadily employed and remarried. Looney and her husband owned a house, and Looney had the support and assistance of her husband and her extended family in Ohio. This testimony further showed that Horton no longer lived with his parents. Horton was now remarried, and he and his wife owned a house. Additional children had joined the Horton household, namely Horton's two step-children and his daughter from his current marriage. H.R.H. and K.L.H., now ages ten and nine, respectively, shared a bedroom with their five-year-old step-sister and two-year-old half-sister. H.R.H. and K.L.H. expressed fear about their father's anger and the disciplinary measures used by their father. These fears were not only about the discipline used as to H.R.H. and K.L.H., but also as to other children in the household. Although the children's paternal grandmother remained involved in the children's lives, their step-mother had assumed a significant role in raising the children.

Based on the evidence presented, the trial court did not abuse its discretion in determining that a material and substantial change in circumstances had occurred. *See In re S.R.O.*, 143 S.W.3d 237, 244 (Tex. App.—Waco 2004, no pet.) (holding the remarriage of a parent can constitute a material change of circumstances); *In re Davis*, 30 S.W.3d 609, 614-15 (Tex. App.—Texarkana 2000, no pet.) ("[T]he change in a child from a babe in arms or toddler to a school-aged child in

itself is sufficient to show the material change necessary to support modification."). Horton's first issue is therefore overruled.

### BEST INTERESTS OF THE CHILDREN

In his second issue, Horton contends the trial court's modification order "was an abuse of discretion because the great weight and preponderance of the evidence shows the girls's current environment is healthy, loving, and stable and that should not be disturbed." Thus, Horton challenges the factual sufficiency of the evidence as to the best interests of the children. Under the abuse of discretion standard, challenges to the legal and factual sufficiency of the evidence are not separate grounds of error; rather, they are factors in evaluating whether the trial court abused its discretion. *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.).When an appellant challenges the legal and factual sufficiency of the evidence in cases where the proper standard is abuse of discretion, the appellate court engages in a two-prong analysis: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Id*.

As a preliminary matter, Horton argues the trial court was required to deny the motion to modify because the initial conservatorship order was res judicata of the best interests of the children and because the attorney ad litem stated the case was a "close call" and the court-appointed evaluator recommended the children remain with Horton. We disagree. Once Looney established a material and substantial change in circumstances, the trial court was in a position to determine the best interests of the children.

The court's primary consideration in determining issues of conservatorship and residency shall always be the best interest of the child. TEX. FAM. CODE ANN. § 153.002 (Vernon 2009); *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000); *Villasenor v. Villasenor*, 911 S.W.2d 411, 419 (Tex. App.—San Antonio 1995, no writ). Courts employ the non-exhaustive list of *Holley* factors to determine the best interests of the children. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see In re Doe 2*, 19 S.W.3d 278, 300 n. 20 (Tex. 2000). The factors include, but are not limited to, (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. A trial court has great discretion in determining the best interest of the child. *Villasenor*, 911 S.W.2d at 419.

As Horton contends, some evidence was presented to show that the children's current environment is healthy, loving, and stable. But there was also evidence to the contrary. The trial court heard testimony that while in Horton's care the children developed a number of significant health problems, including severe tooth decay, a staph infection, impetigo, and scabies. Looney discovered these health problems when the children went to Ohio to visit her. Additionally, although the evidence showed the children were generally good students, evidence was also presented that in the previous school year, K.L.H. had missed seven days of school, and H.R.H. had missed ten days

of school, several of which were unexcused absences. The evidence further showed H.R.H. and K.L.H. were not afforded much privacy in the Horton household.

Much evidence was presented about the discipline employed in the Horton household. Looney initiated several Child Protective Services (CPS) complaints against Horton with respect to his anger and behavior towards the children. While CPS ruled out any abuse, there was some evidence the children told Looney that Horton was short-tempered and they feared him. K.L.H. told Looney she was grabbed and thrown on the bed by Horton. Both children also told Looney they and the other children in the house had been hit by Horton. Horton and his wife admitted that corporal punishment was sometimes used to discipline the children in their household, but they emphasized that they no longer used corporal punishment on H.R.H. and K.L.H. because of their ages. There was also some evidence that H.R.H. and K.L.H. were upset by the way other children in the household were disciplined.

On the other hand, evidence was presented that Looney discovered and obtained treatment for the children's numerous health problems; that Looney was effective in disciplining the children without the use of anger, fear, and spanking; and that Looney provided each child with her own bedroom.

After reviewing the record, we hold the trial court had sufficient evidence before it to determine the best interests of H.R.H. and K.L.H. and, based upon its discretion and the applicable law, the trial court did not err in applying this discretion. Horton's second issue is overruled.

## CONCLUSION

We conclude the trial court did not abuse its discretion in granting the motion to modify and in designating Looney as the conservator with the exclusive right to determine the children's primary residence. The trial court's modification order is affirmed.


Karen Angelini, Justice