# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00751-CV

---

**J. S., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 428TH DISTRICT COURT OF HAYS COUNTY
### NO. 22-2986, THE HONORABLE MELISSA MCCLENAHAN, JUDGE PRESIDING

---

## D I S S E N T I N G   O P I N I O N

This is an appeal from an order terminating a parent-child relationship under Section 161.004 of the Family Code. Section 161.004 permits a trial court to terminate a parent-child relationship after it has previously denied termination of that same relationship. Tex. Fam. Code § 161.004(a). But to do so, the trial court must find, among other things, that the circumstances have "materially and substantially changed" since the rendering of the order denying termination. *Id.* § 161.004(a)(2).

Here, the Court holds that evidence of a decrease in the possessory conservator Mother's visits, considered together with evidence of the negative impact that decrease had on her children, is legally and factually sufficient to support the trial court's finding of a material and substantial change in circumstances. I disagree.

No other court has held such evidence sufficient to support a finding of a material and substantial change in the absence of other aggravating factors, none of which are present here. And with good reason. The stakes are extremely high: "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). And Section 161.004 only comes into play when a factfinder has previously declined to put the relationship to death. Tex. Fam. Code § 161.004(a); *In re T.V.*, 27 S.W.3d 622, 624 n.1 (Tex. App.—Waco 2000, no pet.) (noting that Section 161.004 was passed in response to caselaw applying doctrine of res judicata to order denying termination of parental rights).

That's why the change in circumstances must be "material" and "substantial"— one that significantly increases the justification for termination. And that's why the change must be proven under a heightened evidentiary burden (clear and convincing evidence) and then subjected to a heightened appellate review (one that is less deferential and considers the change in context). The context here shows, unlike prior cases upholding a finding of a material and substantial change, that:

- Mother is not aligned with the foster parents, the latter two having sought termination in the first instance and thus having no incentive to encourage or facilitate visitation,

- Mother is not under a family service plan requiring visitation and the trial court did not otherwise set a visitation schedule,

- Mother is not seeking reunification but simply to remain possessory conservator with a relationship with her children,

- the Department of Family and Protective Services moved to be removed as joint managing conservator—and thereby signaled its approval of Mother remaining possessory conservator—well after the decrease in visitation had occurred,

2

- Mother is successfully raising a third child who is not now and never has been the subject of a Department investigation or legal proceeding, and

- Mother, despite her indigency, lacked representation at a crucial juncture in the proceeding—at the post-transfer hearing where the new judge terminated her right to visitation.

Notably absent is evidence of other aggravating factors—drugs use, unemployment, criminal activity, abusive or inappropriate behavior, failure to follow a family service plan, and the like.

In determining whether a material and substantial change has occurred, the trial court has wide discretion. But it's not unlimited. The line must be drawn somewhere; otherwise, the terms "material" and "substantial" are rendered empty words, and any change, however slight, will suffice.

Considered in context, the decrease in visits and the negative impact that decrease had on her children are insufficient to cause a firm belief in a reasonable factfinder that the justification for termination had significantly increased. Therefore, the trial court erred in finding the circumstances had "materially and substantially changed." Because the Court holds otherwise, I respectfully dissent.

## LAW

I agree with the Court's recitation of the facts, so I won't repeat it here and will instead start with a brief discussion of the law, emphasizing three points. The first concerns the meaning of the statutory requirement of a "material and substantial" change in circumstances. The second concerns the burden of proving such a change. And the third concerns the burden of proof's effect on the standard of review.

Starting with the statute, under Section 161.004, when a trial court has previously rendered an order denying termination of a parent-child relationship, the trial court may not subsequently order termination of that same relationship unless it finds that

> the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered . . . .

Tex. Fam. Code § 161.004(a)(2).

As multiple courts have recognized, "there are no definite guidelines as to what constitutes a 'material and substantial change in circumstances' to terminate parental rights under section 161.004." *In re J.M.T.*, 652 S.W.3d 525, 528–29 (Tex. App.—San Antonio 2022, pet. denied) (quoting *In re F.M.E.A.F.*, 572 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2019, pet. denied)). But applying the normal rules and canons of statutory construction do set some parameters to guide our analysis.

Because the statute does not say what it means for the circumstances to have "materially and substantially changed," we construe the phrase according to its plain meaning, discerned "in context—not isolation." *Kelley v. Homminga*, 706 S.W.3d 829, 832 (Tex. 2025) (per curiam) (quoting *Public Util. Comm'n of Tex. v. Luminant Energy Co.*, 691 S.W.3d 448, 460 (Tex. 2024)).

We look first to dictionary definitions. *See Texas State Bd. of Exam'rs of Marriage & Fam. Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017) ("To determine a statutory term's common, ordinary meaning, we typically look first to their dictionary definitions . . . ."). *Black's Law Dictionary* defines "material" as "having some logical connection with the consequential facts," "of such a nature that knowledge of the item

4

would affect a person's decision-making."  *Material*, BLACK'S LAW DICTIONARY (12th ed. 2024).  And it defines "substantial" as "important, essential," "of real worth and importance," "considerable in extent."  *Substantial*, BLACK'S LAW DICTIONARY (12th ed. 2024).

We next consider the context in which the terms are used:  a statute establishing the circumstances under which a court may terminate the parent-child relationship after the rendition of an order denying termination of that relationship.[1]  Tex. Fam. Code § 161.004(a). And not just any provision of that statute—a provision specifically included to overcome the preclusive effect of the earlier order denying termination.  *Id.* § 161.004(a)(2); *In re K.G.*, 350 S.W.3d 338, 346 (Tex. App.—Fort Worth 2011, pet. denied) (explaining how the Legislature enacted Section 161.004 in response to caselaw "holding that res judicata applied to an attempt to relitigate issues previously tried in a termination case"); *Slatton v. Brazoria Cnty. Protective Servs. Unit*, 804 S.W.2d 550, 553 (Tex. App.—Texarkana 1991, no writ) ("*Res judicata* is applicable to an attempt to relitigate issues previously tried in a termination case.").

---

[1]  Given this context, a material and substantial change under Section 161.004 is distinguishable from a material and substantial change under Section 156.001, the latter of which addresses the circumstances under which a trial court may modify a conservatorship order.  As other courts have recognized, "[a] modification proceeding and a termination proceeding are distinct statutory schemes with different issues, standards of review, and burdens of proof." *In re A.M.*, 451 S.W.3d 858, 860 (Tex. App.—Dallas 2014, no pet.) (citing *In re C.T.*, No. 12-09-00401-CV, 2010 WL 4880631, at *4 (Tex. App.—Tyler Nov. 30, 2010, no pet.) (mem. op.)).  Although both "share the overriding concern that a modification or termination be in the best interest of the child, 'the consequences of termination are permanent, unlike the consequences of modification . . . .'"  *In re A.M.*, 451 S.W.3d at 861 (quoting *In re C.T.*, 2010 WL 4880631, at *5 (quoting *In re N.A.F.*, 282 S.W.3d 113, 117 (Tex. App.—Waco 2009, no pet.)).  So, to the extent the Court is inclined to analogize Section 161.004's requirement of a material and substantial change to the requirement found in Section 156.101, I would note that "an analogy between the two [is] fairly weak." *Id.*  While evidence sufficient to show a material and substantial change under Section 161.004 is sufficient to show a material and substantial change under Section 156.101, the converse is not always true.

So, given the context, the change must be one that supports termination, and it must be sufficiently significant to overcome the preclusive effect of the earlier order.

We now have a better sense of the statute's meaning. Under Section 161.004, a material and substantial change in circumstances is a change that significantly increases the justification for termination. The changed circumstances must be significantly different from the circumstances existing at the rendition of the earlier order, and they must significantly increase the justification for termination.

The determination whether a material and substantial change has occurred is necessarily "fact-specific and must be made according to the circumstances as they arise." *In re A.L.H.*, 515 S.W.3d 60, 80 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Thus, courts have found a material and substantial change in a variety of situations, such as when:

- the mother signed a family service plan prohibiting her from engaging in criminal activity but later committed a state-jail felony and was placed on probation, and then committed another state-jail felony, was taken off community supervision, and sent to jail, *In re F.M.E.A.F.*, 572 S.W.3d at 725–26;

- the Department's primary permanency plan was the rehabilitation of the addict mother and reunification of the family, but the mother continued to fail drug tests and was in drug treatment at the time of trial with another year-and-a-half left in the program, *In re C.A.C.*, No. 14-12-00396-CV, 2012 WL 4465234, at *9 (Tex. App.—Houston [14th Dist.] Sept. 27, 2012, no pet.) (mem. op.);

- the Department notified the father that an order terminating his parental rights had been reversed, but the father not only failed to communicate with the Department; he actively sought to conceal his whereabouts, and was eventually incarcerated for violating his probation, *In re J.M.T.*, 652 S.W.3d at 531; and

- the mother signed a family service plan requiring her to attend all her disabled son's medical appointments and visit him once a week at the foster parent's home, but then failed to attend any medical appointments or to visit him for over two months despite offers by the Department and foster parent to provide transportation, *In re M.J.W.*, No. 14-16-00276-CV, 2016 WL 4206046, at *4, 8 (Tex. App.—Houston [14th Dist.] Aug. 9, 2016, pet. denied) (mem. op.).

6

There appears to be a common thread running through these cases: the circumstances were significantly different from those existing at rendition of the previous order denying termination such that the justification for termination had significantly increased.

Which brings us to the burden of proof. As the Texas Supreme Court recently explained, the purpose of the burden of proof is "to 'instruct the factfinder concerning the degree of confidence our society thinks [one] should have in the correctness of factual conclusions for a particular type of adjudication.'" *Stary v. Ethridge*, No. 23-0067, 2025 WL 1271689, at *5 (Tex. May 2, 2025) (quoting *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980)). Normally, civil cases require that only a preponderance of the evidence support an affirmative finding. *Stary*, 2025 WL 1271689, at *5. But when "particularly important" rights are at risk, such as the fundamental rights of parents, "a heightened clear and convincing standard applies . . . ." *Id.* (quoting *Addington v. Texas*, 441 U.S. 418, 424 (1979)).

Thus, in parental termination cases, affirmative findings must be supported by clear and convincing evidence, Tex. Fam. Code § 161.001(b), that is, evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. "This heightened proof standard carries the weight and gravity due process requires to protect the fundamental rights at stake." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). Termination, after all, "'is complete, final, irrevocable and divests for all time' the natural and legal rights between parent and child . . . ." *Id.* (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)).

From this it follows that clear and convincing evidence must support a finding of a material and substantial change. Or, stated a bit more precisely for present purposes, to support a finding of a material and substantial change, the evidence must be sufficient to produce a firm

7

belief or conviction that the changed circumstances significantly increased the justification for termination.

And with a heightened evidentiary burden comes a heightened standard of review. *In re A.C.*, 560 S.W.3d at 630 (when evidentiary burden is clear and convincing evidence, "[a] correspondingly searching standard of appellate review is an essential procedural adjunct"); *see also In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (explaining that "due process requires that the appeal be meaningful").

In conducting a legal-sufficiency review, we cannot ignore undisputed evidence contrary to the finding but must otherwise assume the factfinder resolved disputed facts in favor of the finding. *In re A.C.*, 560 S.W.3d at 630–31. Evidence is legally insufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could not form a firm belief or conviction that the finding was true. *Id.* at 631.

In conducting a factual-sufficiency review, we must weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *Id.* Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *Id.*

From this discussion of the law, we should bear in mind three key points when reviewing the trial court's finding of a material and substantial change. First, a material and substantial change is a change that significantly increases the justification for termination. Second, a material and substantial change must be proven under a heightened evidentiary burden

(clear and convincing evidence). Third, a finding of a material and substantial change is subjected to a heightened appellate review (one that affords less deference to the factfinder).

## ANALYSIS

Turning to our analysis, let's begin by considering the evidence favoring the trial court's finding—that is, the evidence favoring a finding that the justification for termination has significantly increased. Everyone agrees such evidence primarily consists of two related categories: (1) the decrease in Mother's visits, including two lengthy periods during which Mother made no visits at all, and (2) the negative impact that decrease in visits had on Mother's children.

The Court holds that this evidence is sufficient to support the trial court's finding. As support for its holding, the Court relies on *M.J.W.*, in which the Houston Fourteenth Court of Appeals upheld a trial court's finding of a material and substantial change based on evidence that the mother had failed to attend any of her son's medical appointments or to visit him in over two months. *In re M.J.W.*, 2016 WL 4206046, at *8.

Based on my research, *M.J.W.* is the most on point precedent. But it is still distinguishable in crucial ways. Unlike Mother here, the mother in *M.J.W.* continued to test positive for drugs after rendition of the trial court's prior order denying termination. *Id.* at *6. And unlike Mother here, the mother in *M.J.W.* signed a family service plan requiring her to attend her son's medical appointments and to visit him once week (and presumably admonishing her that failure to do so could result in termination of her parental rights). *Id.* at *4. Unlike the children here, the son in *M.J.W.* suffered from a "severe" disability, adding another dimension of importance to the mother's attendance of his medical appointments and weekly visits. *Id.* at *2.

9

And unlike the foster parents and Department here, the foster parent and Department in *M.J.W.* offered to provide the mother transportation to and from her son's medical appointments and visits, giving her no excuse for failing to attend. *Id.* at *4, 8.

So the most on point case is actually quite distinguishable. The evidence favoring the trial court's finding in *M.J.W.* was much stronger than the evidence favoring the trial court's finding here. And this evidence is diminished even further when we consider four additional pieces of context.

First, the trial court never set a visitation schedule, which is unusual when, as here, the interests of the joint managing conservators and possessory conservator are not aligned.

Second, Mother is not seeking reunification but simply to remain possessory conservator, which diminishes the materiality and substantiality of her decrease in visits. As Mother observes in her brief, "[m]ost of the cases that equate a lack of visits to a material and substantial change involve a service plan, in which visits were a part of the requirements to reunify."

Third, over two years after the first trial, the Department moved the trial court to remove it as joint managing conservator of the children, leaving the foster parents as the remaining joint managing conservators and Mother as possessory conservator, thereby signaling its approval of that arrangement. At that time, the Department couldn't have considered the decrease in visitation and negative impact on the children a material and substantial change in circumstances justifying termination; otherwise, it wouldn't have moved to be removed.

And fourth, Mother, despite her indigency, lacked representation at a crucial juncture in the proceedings. On December 12, 2022, the Travis County trial court transferred the case to Hays County. The transfer order dismissed Mother's counsel, but the Hays County trial

court did not appoint Mother new counsel until over six months later, on June 20, 2023. But it ordered that Mother's visits stop before then, four days earlier, on June 16, 2023. Thus, when the Hays County trial court was tasked with deciding whether to stop Mother's visits, Mother lacked an advocate who could have argued on her behalf why her visits should have been continued.

Now let's consider the evidence contrary to the trial court's finding and then weigh it against the evidence in favor of it to determine whether a reasonable factfinder could have formed a firm belief or conviction that the decrease in visits and concomitant impact on the children significantly increased the justification for termination.

Mother is successfully raising a third child, another daughter, who is not now and never has been the subject of a Department investigation or legal proceeding. It is undisputed that she is healthy and doing well. Mother is employed. Mother has stable housing. And Mother's visits with her children have been appropriate.

So the evidence shows a mother whose visits decreased while she maintained employment and housing and successfully raised another child. The decrease had a negative impact on her other two children. But should that alone suffice to produce a firm belief or conviction in a reasonable factfinder that the justification for termination had *significantly* increased? I think not. The situation here is a far cry from cases in which other courts of appeals have upheld a finding of a material and substantial change. Since the first trial, Mother hasn't committed any crimes, *see In re F.M.E.A.F.*, 572 S.W.3d at 725–26 (material and substantial change when mother committed multiple state-jail felonies and was sent to jail), failed any drug tests, *In re C.A.C.*, 2012 WL 4465234, at *9 (material and substantial change when mother continued to fail drug tests), or gone AWOL, *see In re J.M.T.*, 652 S.W.3d at 531 (material and

11

substantial change when father failed to communicate with Department and actively concealed his whereabouts).

We are deferential to the trial court's finding. But the deference isn't unlimited. The line must be drawn somewhere. Keeping the plain meaning of the statutory text front of mind, I would hold the evidence legally and factually insufficient to support the trial court's finding of a material and substantial change.

**CONCLUSION**

Today the Court holds that evidence of a decrease in the possessory conservator Mother's visits, considered together with evidence of the negative impact that decrease had on her children, is legally and factually sufficient to support the trial court's finding of a material and substantial change in circumstances under Section 161.004. No other court has held such evidence sufficient to support such a finding in the absence of other aggravating factors, none of which are present here.

This is our first opportunity to create caselaw providing guidance for determining when the circumstances have "materially and substantially changed" under Section 161.004. I would take advantage of this opportunity by issuing an opinion that construes the text according to its plain meaning and makes clear that the change must be *material* and *substantial*.

Unless and until we do, I fear that lower courts and practitioners will operate under the false impression that any change will suffice and that this will enable unsuccessful petitioners for termination to take a second bite at the apple—and increase their chances of succeeding the second time by encouraging them to manufacture a material and substantial change themselves. Such perverse incentives increase the risk of the erroneous deprivation of parental rights and are

12

at odds with the paramount consideration in custody cases: the best interest of the child. I respectfully dissent.

_____

Maggie Ellis, Justice

Before Justices Kelly, Crump, and Ellis

Filed: May 14, 2025

13